UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JOANN HANSON,                                              Civil No. 05-1680 (JRT/FLN)

                Plaintiff,

v.                                                                        **MEMORANDUM OPINION AND ORDER**

CENTEX HOMES,

                Defendant.

---

Sandra P. Barnes and Susan D. Thurmer, **COUSINEAU MCGUIRE & ANDERSON CHARTERED,** 1550 Utica Avenue South, Suite 600, Minneapolis, MN 55416, for plaintiff.

Andrew J. Voss and Bryan N. Smith, **LITTLER MENDELSON,** 33 Sixth Street South, Suite 3110, Minneapolis, MN 55402, for defendant.

Plaintiff JoAnn Hanson ("Hanson") brought this action in state court against her former employer, defendant Centex Homes ("Centex"), alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA") and the Minnesota Human Rights Act ("MHRA"), as well as breach of contract, and intentional and negligent infliction of emotional distress. Defendant removed the case to federal court, and now moves to dismiss plaintiff's case, or in the alternative, to compel arbitration of plaintiff's case. For the reasons set forth below, the Court grants defendant's motion to compel arbitration.

**BACKGROUND**

Hanson began working for Centex as a receptionist in 1996. At that time, she had a high school education, and her salary was roughly $23,000 per year. Over the next few years, Hanson took real estate courses in order to become a licensed realtor, and climbed the ranks at Centex to become a home seller. In 2001, Hanson was promoted to a commissioned New Home Consultant. Later, in May 2002, plaintiff executed a New Home Consultant policy ("Policy"). At that time, plaintiff's salary had increased substantially, such that she was guaranteed a $50,000 annual draw, with the possibility of earning in excess of $100,000.

The Policy requires arbitration of all disputes between Hanson and Centex. In addition, the Policy precludes the award of punitive damages.[1] Hanson did not attempt to negotiate any of the Policy before she signed it. She felt that she would not be able to continue working at Centex if she did not sign it, and she knew that it was a form contract that everybody in her position signed.

Hanson was terminated in 2004.

**ANALYSIS**

**I.    Contract of Adhesion**

Minnesota courts define a contract of adhesion as one "drafted unilaterally by a business enterprise and forced upon an unwilling and often unknowing public for services

---

[1] The Policy also establishes a short limitations period for bringing discrimination claims, however, it is undisputed that plaintiff brought her claim within even that shorter time period, and Centex does not contend that Hanson's complaint was untimely. Accordingly, the Court will not address Hanson's arguments regarding the Policy's limitations period.

that cannot readily be obtained elsewhere." *Schlobohn v. Spa Petite, Inc.*, 326 N.W.2d 920, 924 (Minn. 1982). Two factors are considered in determining if a particular contract is one of adhesion: (1) whether the contract was a result of superior bargaining power of one of the parties and (2) whether the service involved a public necessity. *Personalized Marketing Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 452 (Minn. Ct. App. 1989). In the context of employment agreements, the Supreme Court has held that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991); *see also Gooden v. Village Green Mgmt. Co.*, 2002 WL 31557689, at *3 (D. Minn. Nov. 15, 2002).

Hanson argues that the Policy is a contract of adhesion and therefore unenforceable. Specifically, Hanson contends that the Policy was offered to her on a take-it-or-leave-it basis, and that she signed it because she was hoping to earn significantly greater income than she had as a receptionist, and because of the disparity in economic power and bargaining ability between herself and Centex. Hanson does not allege any kind of fraud related to the Policy.

This is not sufficient evidence of "overwhelming economic power," fraud, or refusal to negotiate that is required to vitiate an employment contract as a contract of adhesion. Although Hanson has offered evidence of her increase in income between her position as a receptionist and her position as a commissioned New Home Consultant, she has not offered evidence regarding the other home seller positions she held prior to her final position. Moreover, although Hanson thought the Policy was a standard contract

and that every New Home consultant signed it (which apparently is the case), Hanson was not specifically told that it was take-it-or-leave-it, nor was she told that the Policy was non-negotiable.  Finally, there is no allegation of fraud.

Accordingly, the Court holds that the Policy is not unenforceable as a contract of adhesion.

## II.   Punitive Damages

Under the Federal Arbitration Act, the district court's duty is limited to determining whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement.  *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001).  In *Larry's United Super*, the arbitration agreement at issue required arbitration of all disputes relating to the agreement, and contained a provision waiving all punitive damages.  The plaintiffs, who brought suit in federal court under RICO, which provides for the availability of punitive damages in certain circumstances, argued that the punitive damages waiver rendered the arbitration agreement unenforceable.

The Eighth Circuit disagreed, holding that the validity of a punitive damages waiver in an arbitration agreement was a matter for the arbitrators to decide when fashioning an appropriate remedy.  *Id.* at 1086 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)); *see also Gannon v. Circuit City Stores, Inc.*, 262 F.3d 677, 682 n.6 (8th Cir. 2001) (citing *Larry's Super United* for that proposition in employment discrimination case); *Bob Schultz Motors, Inc. v. Kawasaki*

*Motors Corp.*, 334 F.3d 721, 726 (8th Cir. 2003) (citing *Larry's United Super*); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (holding that the FAA's provisions apply to arbitration agreements covering employment-related claims).

In the instant case, it is clear that an agreement to arbitrate exists between the parties, and that the underlying dispute falls within the scope of the arbitration agreement. Hanson argues that the Policy is unenforceable because it contains a punitive damages waiver. Such a waiver does not, however, render an arbitration agreement invalid. *See, e.g.*, *Larry's Super United*. Accordingly, the Court holds that the Policy is not unenforceable because of the punitive damages waiver.

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss or in the Alternative, to Stay Proceedings, and to Compel Arbitration Motion [Docket No. 2], to the extent it seeks to compel arbitration, is **GRANTED**;

2. The case shall be **STAYED** pending the outcome of the arbitration, and the parties shall submit a joint letter to the Court following the arbitration indicating whether there are further issues for the Court to resolve.

DATED: November 18, 2005             s/ John R. Tunheim
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                       United States District Judge